**Seble KEBEDE, Petitioner,**

v.

**John ASHCROFT, Attorney General,\* Respondent.**

**No. 02–73135.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 1, 2004.

Filed May 3, 2004.

\* We amend the caption to reflect that John Ashcroft, Attorney General, is the proper respondent pursuant to Fed. R.App. P. 43(c)(2). The Clerk shall amend the docket to reflect the above caption.

Sandra A. Ronald, Calabasas, CA, for the petitioner.

Virginia M. Lum, Janice K. Redfern, Attorneys, U.S. Department of Justice, Washington, D.C., for the respondent.

Before GOODWIN, PREGERSON, and TALLMAN, Circuit Judges.

GOODWIN, Circuit Judge:

Seble Kebede petitions for review of the Board of Immigration Appeal's ("BIA") final order denying her request for asylum and withholding of deportation. Because the BIA affirmed the Immigration Judge's ("IJ") decision without opinion, we review the IJ's decision as the final agency action. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir.2003). The IJ erred in making an adverse credibility determination and in finding that Kebede failed to support her claim of past persecution with substantial evidence.

## I. Background

Kebede, an Ethiopian citizen, comes from a family that was powerful during the rule of former Emperor Haile Selassie. After Emperor Selassie was deposed in 1974, Kebede's uncle, the former governor of Harar, was assassinated along with fifty-nine other officials by the Dergue revolutionary government. Her stepfather, the former minister of foreign affairs, was imprisoned, and died shortly after his release from illness and injuries resulting from beatings by prison officials. Dergue officials visited Kebede's house frequently, conducting searches and occasionally taking her mother, Shitaye Wolde Amanuel ("Amanuel"),[1] and brothers into custody for questioning. The family moved in 1979 in an attempt to avoid further harassment, but government officials continued the searches at their new home.

One evening in September 1988, Kebede was at her family's house alone when two Dergue soldiers arrived for a search. Accustomed to these searches, she allowed the soldiers to enter. After the soldiers finished the search, one moved to lock the door. Kebede testified that she tried to run, but that the soldiers held her while ripping off her clothes. The soldiers then beat her, and each took turns raping her while the other held her down. One said, "You had your time in the previous government and this is what you deserve." After the rape, Kebede began screaming hysterically. When attempts to quiet her by threatening her with a gun failed, one of the soldiers slammed her head against a wall, causing her to black out.

Amanuel came home to find Kebede naked and inert, with furniture strewn about the front room. After determining that Kebede was still alive, Amanuel took her to the hospital. Kebede remembered waking up in a taxi on the way to the hospital, Amanuel by her side. Kebede stayed one night in the hospital, during which doctors "have [sic] to cut and depressurize the excess fluid" from her head injury. At the hearing before the IJ, Amanuel confirmed Kebede's account of the incident, as well as the family's history of harassment and persecution by agents of the Dergue government. Their testimony differed only in that Amanuel believed that Kebede regained consciousness after they reached the hospital.

Kebede fled Ethiopia for the United States in 1990, and overstayed her non-immigrant visa. On March 1, 1996, the Immigration and Naturalization Service initiated deportation proceedings against her.

The IJ denied Kebede's asylum application, finding that Kebede was not credible, and that even if her testimony was believed, Kebede failed to carry her burden of establishing past persecution and fear of future persecution.

## II. Analysis

### A. Adverse Credibility Determination

■■■ The IJ rejected Kebede's claim for asylum on credibility grounds. Although we review an adverse credibility finding under the deferential "substantial evidence" standard, *He v. Ashcroft*, 328 F.3d 593, 595 (9th Cir.2003); *Alvarez–Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003), such a finding "must be supported by a specific, cogent reason." *De Leon–Barrios v. INS*, 116 F.3d 391, 393 (9th Cir.1997) (quoting *Berroteran–Melendez v.*

---

1. Amanuel is referred to throughout as Kebede's mother, as she raised Kebede from infancy after Kebede's biological parents died. Amanuel is actually Kebede's paternal grandmother. All references to Kebede's other relatives are made as if Amanuel was Kebede's mother.

*INS,* 955 F.2d 1251, 1256 (9th Cir.1992)). The inconsistencies on which the IJ relied are not "significant and relevant" and do not support an adverse credibility determination. *Lata v. INS,* 204 F.3d 1241, 1245 (9th Cir.2000).

In making the adverse credibility finding, the IJ focused on the petitioner's reluctance to discuss the rape, or to report it in her asylum interview and application. We have previously rejected "the assumption that the timing of a victim's disclosure of sexual assault is a bellwether of truth." *Paramasamy v. Ashcroft,* 295 F.3d 1047, 1053 (9th Cir.2002) (finding that failure to report a sexual assault in an asylum interview does not support an adverse credibility finding). Kebede persuasively explained that she was ashamed of discussing rape with anyone. Amanuel testified that Kebede had refused, for about two weeks, to discuss the rape even with her. Kebede provided a "strong, unrebutted explanation for her reluctance" to discuss the assault. *Id.* A victim of sexual assault does not irredeemably compromise his or her credibility by failing to report the assault at the first opportunity.

To further support the adverse credibility determination, the IJ picked at minor memory lapses and inconsistencies on issues at the periphery of Kebede's asylum claim. The IJ erroneously found that the difference between when Kebede recalled regaining consciousness after the assault and when Amanuel believed Kebede awoke was significant. "[M]inor discrepancies ... [that] cannot be viewed as attempts by the applicant to enhance h[er] claims of persecution have no bearing on credibility." *Damaize–Job v. INS,* 787 F.2d 1332, 1337 (9th Cir.1986); *see also Wang v. Ashcroft,* 341 F.3d 1015, 1021–22 (9th Cir.2003) (finding that minor inconsistencies between a petitioner's and another witness's testimony that are not material to the

persecution claim cannot support an adverse credibility finding). Kebede and Amanuel gave conflicting testimony on where Kebede's brother was residing at the time of the hearing, but the record indicates that the disagreement between Kebede's and Amanuel's testimony had more to do with Amanuel's difficulties with English than with prevarication. The IJ found that Kebede dissembled by claiming to have poor English, but Kebede's characterization of her own English skills as "not very good" does not make her testimony less believable.

None of the IJ's proffered reasons seriously call into question the fact and nature of Kebede's rape. Kebede gave a credible account of her rape, evidence that was corroborated by Amanuel's testimony. The petitioner's evidence was "so compelling that no reasonable factfinder could find that [s]he was not credible." *Farah v. Ashcroft,* 348 F.3d 1153, 1156 (9th Cir. 2003) (quotation marks and citation omitted). We conclude that the IJ's adverse credibility determination was not supported by substantial evidence.

## B. Asylum Claim

██ A petitioner seeking asylum carries the burden of showing that he or she is unwilling to return to the country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Melkonian v. Ashcroft,* 320 F.3d 1061, 1064 (9th Cir.2003) (quoting 8 U.S.C. § 1101(a)(42)(A)). A showing of past persecution creates a rebuttable presumption that the petitioner has reason to fear future persecution. *Prasad v. INS,* 101 F.3d 614, 617 (9th Cir.1996). The burden shifts to the respondent to show, by a preponderance of the evidence, that the petitioner no longer has a well-founded fear of perse-

cution. *Singh v. Ilchert,* 69 F.3d 375, 378 (9th Cir.1995). If this presumption is not rebutted, the petitioner is statutorily eligible for asylum. *INS v. Ventura,* 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

Rape "can support a finding of persecution," but "a petitioner alleging persecution must present some evidence, direct or circumstantial, of the persecutor's motive." *Lopez–Galarza v. INS,* 99 F.3d 954, 959 (9th Cir.1996). The motive requirement is satisfied by evidence that political opinion was imputed to the petitioner. *Id.* That the alleged persecutor acted because of a petitioner's family's political associations is sufficient. *Id.* at 960 (finding that a rape victim was eligible for asylum because evidence showed that "[h]er family's ties to the Somoza regime were well-known in her community").

■ The IJ found that even if Kebede's testimony could be considered credible, Kebede failed to meet her burden of showing eligibility for asylum. The IJ determined that the Dergue soldiers did not rape Kebede "because of" her family background. The IJ erred in this regard, ignoring evidence that the soldiers linked their assault on Kebede with her family's authority and position in the Selassie regime. During the rape, one soldier stated that Kebede was getting her due because "You had your time in the previous government." The IJ also erred in finding that the rape was an isolated incident, failing to recognize that this visit to Kebede's home was a part of a regular program of searches to which Kebede's family was subject.

We reverse the IJ's holding that Kebede failed to establish that she suffered past persecution.

### C. Disposition

The IJ ended the matter by noting that another regime change had occurred in Ethiopia in 1991, after Kebede had reached the United States, and therefore that Kebede no longer had reason to fear future persecution. Kebede does not contest this finding. She instead argues that the atrocity of the abuse by the Dergue soldiers qualifies her for discretionary relief on humanitarian grounds. *See Lopez–Galarza,* 99 F.3d at 960.

■ A petitioner may be eligible for asylum on the basis of past persecution alone, "even where there is little likelihood of future persecution." *Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993). Asylum may be granted for humanitarian reasons where a petitioner has suffered " 'atrocious forms of persecution.' " *Lopez–Galarza,* 99 F.3d at 960–61 (quoting *Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees,* at § 136 (1979), *revised by* U.N. Doc. HCR/IP/4/Eng/REV.1 (1992)); *accord Vongsakdy v. INS,* 171 F.3d 1203, 1206 (9th Cir. 1999); *Acewicz,* 984 F.2d at 1062; *Kazlauskas v. INS,* 46 F.3d 902, 906–07 (9th Cir.1995); *Matter of Chen,* 20 I. & N. Dec. 16, 19 (BIA 1989).

■ The IJ did not determine whether the persecution Kebede suffered qualifies her for asylum for humanitarian reasons. This question is not for us to decide in the first instance. *See Rodriguez–Matamoros v. INS,* 86 F.3d 158, 161 (9th Cir.1996). We remand to the BIA for a determination of whether Kebede's past persecution was atrocious, such that it warrants a grant of asylum.

**PETITION GRANTED AND REMANDED.**