Melkamsera TEREFE, Petitioner,

v.

Alberto R. GONZALES,* Attorney General, Respondent.

No. 03-71988.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 2005.

Decided May 27, 2005.

Dario Aguirre, Esq., San Diego, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: T.G. NELSON, W. FLETCHER, and BEA, Circuit Judges.

MEMORANDUM **

Melkamsera Terefe, a citizen of Ethiopia, petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of an immigration judge's ("IJ")

---

* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

denial of her applications for asylum and withholding of removal, and request for relief under the Convention Against Torture ("CAT"). We vacate and remand to the BIA for further consideration in light of our intervening decisions, *Kebede v. Ashcroft,* 366 F.3d 808, 811 (9th Cir.2004) (failing to mention a rape in an initial asylum interview will not support an adverse credibility determination when the alien has persuasively explained that the rape was not reported because of shame) and *Singh v. Gonzales,* 403 F.3d 1081, 1089 (2005) (holding that conclusory summaries of an asylum interview are "not substantial record evidence supporting the IJ's adverse credibility ground" unless accompanied by supporting evidence).

Terefe claims that her political activities in Ethiopia led to her arrest and detention for fifteen days in 1992. During this period, Terefe asserts that she was raped in two separate incidents. The IJ determined that Terefe was not credible and rejected her asylum and CAT claims on this basis. In an oral opinion, the IJ primarily reasoned that Terefe's failure to mention the rapes in her first asylum application and interview completely undermined her credibility. In further support of his adverse credibility finding, the IJ noted that, during the initial asylum process, Terefe failed to mention her brother's ongoing incarceration. He additionally found that Terefe's demeanor led him to conclude that Terefe was not credible.

Subsequent to the IJ's decision and the BIA's affirmance, we held that the failure of an Ethiopian woman seeking asylum to mention a rape in her initial asylum application cannot serve as the basis for an adverse credibility determination when she has persuasively explained that the rape was not initially reported because of shame. *Kebede,* 366 F.3d at 811. Here, Terefe testified that she did not discuss the rapes with anyone because she suffered from Post Traumatic Stress Disorder and was ashamed. This testimony was supported by a letter from her psychologist as well as by the testimony of her cousin. Like the asylum seeker in *Kebede,* Terefe is an Ethiopian woman.

We have also recently held that a written summary of an alien's initial interview with an asylum officer is "not sufficient evidence of what [the alien] said to permit evaluation of an asserted conflict" absent testimony by the asylum interviewer, a transcript of the proceedings, contemporaneous notes of the proceedings, or information about whether a translator was made available to the alien during that initial interview. *Singh v. Gonzales,* 403 F.3d 1081, 1087–1088 (2005). Here, to demonstrate an asserted conflict in evidence, the IJ also partially relied on a summary of Terefe's initial interview with an asylum officer, which was provided in an "Intent to Deny" notice sent by the INS to Terefe. As in *Singh,* there is little information about the reliability of the summary contained in Terefe's "Intent to Deny" notice because the officer who conducted the interview did not testify. Nor did the officer provide detailed notes from the interview, a transcript, or other helpful information about the circumstances under which the interview was conducted.

The IJ in this case did not have the benefit of our decisions in *Kebede* and *Singh* when he ruled in this case. We vacate and remand for reconsideration in light of *Kebede* and *Singh.*

VACATED AND REMANDED.

BEA, Circuit Judge, dissenting.

The majority vacates and remands this case to the BIA for further consideration in light of our decisions in *Kebede v. Ashcroft,* 366 F.3d 808 (9th Cir.2004) and

*Singh v. Gonzales,* 403 F.3d 1081 (2005). I respectfully dissent.

The record contains substantial evidence that supports the IJ's adverse credibility findings. For example, in her 1993 asylum application Terefe claimed physical abuse. However, in her interview with the asylum officer, Terefe denied suffering physical abuse. The majority holds that it is improper to rely upon any inconsistencies with Terefe's interview with the asylum officer because that interview was not properly documented. *See Singh v. Gonzales,* 403 F.3d 1081 (2005). However, unlike the petitioner in *Singh,* Terefe submitted a "rebuttal" letter on June 8, 1993, in which she affirmed and ratified her statements in the interview by twice stating that she was not subject to physical abuse. Thus, even if this court discounts the inconsistency with the interview itself, substantial evidence still supports the IJ's finding that Terefe created inconsistency between her application and her asylum interview about whether she suffered any physical abuse. Such inconsistency went to the "heart of the matter": her claims of abuse (persecution) which she feared were she to return to Ethiopia.

Terefe also took inconsistent positions about whether she was tortured. In her 1993 application, she claims she was tortured. However, at the asylum hearing before the IJ, Terefe testified that she was not tortured.

Finally, Terefe's claim that "cultural shame" was the reason she failed to mention her claim of being raped can scarcely apply here. Unlike the petitioner in *Kebede,* Terefe did not keep silent about her rape. On the contrary, the record reflects that Terefe told one of her cell mates that she had been raped, who in turn told Terefe's brother, who in response bailed Terefe out of jail.

Based on the foregoing, I believe that substantial evidence supports the IJ's adverse credibility finding, and I would therefore affirm.