**Valeriu NEGOESCU, et al., Petitioners,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–74288.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 16, 2006.[*]

Filed Aug. 18, 2006.

---

[*] This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Alexandru A. Cristea, Esq., Downey, CA, for Petitioners.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Lisa M. Arnold, Attorney, Anh–Thu P. Mai, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: BERZON, RAWLINSON, and CALLAHAN, Circuit Judges.

## MEMORANDUM **

Petitioners Valeriu Negoescu, his wife, and daughter, all Romanian nationals, fled claimed persecution in Romania and sought asylum in France in 1990. The French government granted petitioners refugee status and gave them resident cards that allowed them to live and work in France, obtain government-sponsored health care, attend public schools, and travel freely in and out of the country. The cards were valid for eleven years.

In May 1993, petitioners traveled to the United States and remained here until the Immigration and Naturalization Service initiated removal proceedings against them in November 1999. Petitioners conceded removability, but requested asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Alternatively, they sought voluntary departure.

The immigration judge ("IJ") denied asylum, finding that petitioners had firmly resettled in France. He also denied withholding of removal because petitioners failed to demonstrate that they would more likely than not be persecuted if removed.[1] Because there was no evidence that petitioners were tortured, prosecuted, or mistreated during their three-year stay in France, the IJ also denied relief under CAT. Moreover, he determined that the harassment and interrogation that Valeriu encountered in Romania did not rise to the level of torture. Finally, the IJ denied voluntary departure because petitioners could not demonstrate that they could obtain travel documents if granted voluntary departure. The Board of Immigration Appeals ("BIA") summarily affirmed and petitioners timely appealed. We affirm the IJ's decision in all respects, except his finding that petitioners had firmly resettled in France.

When the BIA summarily affirms the IJ's decision, we review the IJ's decision as the final agency action. *Kebede v. Ashcroft*, 366 F.3d 808, 809 (9th Cir.2004). The decision that an alien has not established eligibility for asylum, withholding of removal, or relief under CAT is reviewed for substantial evidence. *Njuguna v. Ash-*

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The IJ noted that each of the petitioners declined to designate a country for removal. He designated France as the country for removal in the first instance, and in the alternative, Romania.

croft, 374 F.3d 765, 769 (9th Cir.2004); Zheng v. Ashcroft, 332 F.3d 1186, 1193 (9th Cir.2003). Under the substantial evidence standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, we must uphold the IJ's determination if it is supported by reasonable, substantial, and probative evidence in the record. INS v. Elias–Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

We review de novo claims of due process violations, Sanchez–Cruz v. INS, 255 F.3d 775, 779 (9th Cir.2001), but lack jurisdiction to review the BIA's decision to grant or deny a request for voluntary departure. Garcia v. Ashcroft, 368 F.3d 1157, 1159 (9th Cir.2004).

*Due Process*

An applicant for asylum is entitled to a full and fair hearing and a reasonable opportunity to present evidence on his behalf. Cano–Merida v. INS, 311 F.3d 960, 964 (9th Cir.2002). In addition to showing a due process violation, an applicant must also show prejudice. Id. at 965. Prejudice can be shown where "the IJ's conduct potentially affected the outcome of the proceedings." Id. (internal quotation marks and brackets omitted).

▮ Petitioners argue that the IJ violated their due process rights "by distorting and ignoring important evidence[,] ... making unwarranted assumptions and conclusions not supported by the record," relying on "statements by an Asylum Officer regarding [Valeriu's] interview conducted without an interpreter," and failing to translate Valeriu's asylum application to Romanian.

These arguments fail because petitioners have made no showing that a translation would have potentially affected the outcome of the hearing, or offered any evidence that they were denied the right to present admissible evidence that would have clarified the record. Cano–Merida, 311 F.3d at 964.

*Asylum*

▮ The IJ determined that petitioners were ineligible for asylum based solely on the finding that they had firmly resettled in France. In order to find firm resettlement, however, there must be direct or indirect evidence of an offer of permanent residence in a third country where the applicant lived peacefully and without restriction. Maharaj v. Gonzales, 450 F.3d 961, 974–75 (9th Cir.2006) (en banc).[2] Here, it is undisputed that France issued the petitioners residence cards that were valid for eleven years. Since this was not an offer of permanent residence, we are compelled to reverse the IJ's finding of firm resettlement. Id.

*Withholding of Removal and Relief under CAT*

▮ Notwithstanding, we find that the IJ's determination that petitioners are not eligible for withholding of removal or relief under CAT is supported by substantial evidence. "To qualify for withholding of removal, an alien must demonstrate that it is more likely than not that he would be subject to persecution on one of the specified grounds" if removed. Al–Harbi v. INS, 242 F.3d 882, 888 (9th Cir.2001) (internal quotation marks omitted). To be eligible for relief under CAT, an alien must demonstrate "a chance greater than fifty percent that he will be tortured" if re-

2. Our decision in Maharaj was published after the IJ made his determination of firm resettlement.

moved. *Hamoui v. Ashcroft,* 389 F.3d 821, 827 (9th Cir.2004).

Petitioners' perception of a rising public sentiment against foreigners just before leaving France, and the fact that anti-foreigners had written "Dirty go home" on their door, is insufficient to establish a probability that they would be persecuted or tortured if removed to France. Likewise, Valeriu's claim that the Securitate would be more likely than not to persecute or torture him if he returned to Romania is not supported by the record. We assume without deciding for purposes of this disposition, as the IJ did in the alternative, that there was a sufficient showing of past persecution. Nonetheless, there is sufficient evidence in the record to rebut the presumption created by past persecution that petitioner is more likely than not to be persecuted upon return to Romania. State Department reports noted significant human rights improvements in Romania since the overthrow of the communist regime in 1989, and observed a measurable decrease in the number of asylum applications.[3] As to Valeriu's alleged relationship with Romanian intelligence services, the State Department reported:

Some applicants allege that unreconstructed functionaries, despite their diminishing number, will seek them out for retribution. The Romanian Intelligence Service (SRI), heir to Ceausescu's justly hated Securitate, has undergone repeated restructuring, lost the powers of arrest and detention of suspects, and has neither the priorities nor resources for the targeted harassment of individuals practiced by the Communists. Plausible allegations of surveillance or intimidation have virtually disappeared, and, in our view, allegations of intelligence service action against individuals for political reasons are no longer defensible.

On this record, petitioners failed to establish that it is more likely than not that they would be persecuted or tortured if removed to France or Romania. Therefore, we must affirm the IJ's finding that petitioners are not eligible for withholding of removal or relief under CAT. 8 C.F.R. §§ 208.16(b)(2) & (c)(2); see also *Elias–Zacarias,* 502 U.S. at 481, 112 S.Ct. 812 (holding that the BIA's determination that a petitioner is not eligible for relief must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole") (citation omitted).

The petition for review of the IJ's denial of asylum is **GRANTED.** The IJ's finding of firm resettlement is **VACATED** in light of *Maharaj v. Gonzales,* 450 F.3d at 974–75, and petitioners' asylum claim is **REMANDED** to the BIA with instructions to REMAND to the IJ for consideration of the merits. The petition for review of the IJ's denial of withholding of removal and relief under CAT is **DENIED.** The petition for review of the IJ's denial of voluntary departure is **DISMISSED.**

RAWLINSON, Circuit Judge, concurring:

I concur in the result.

---

**3.** The State Department Report stated that "[p]olitical conditions have so improved over the past 8 years as to remove any presumption that pre-revolution or immediate post-revolution mistreatment will lead to future problems."