NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FRANCISCO FLORES BARRERA, AKA Roxana Espinoza Pena, AKA Jessica Flores, AKA Mariana Andrea Flores, AKA Javier Torres Valdez, | No.    15-72997 |
| | Agency No. A200-964-012 |
| Petitioner, | MEMORANDUM[*] |
| v. | |
| MERRICK B. GARLAND, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 14, 2022[**]
Pasadena, California

Before:  PAEZ, SMITH,[***] and BADE, Circuit Judges.
Dissent by Judge PAEZ.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable D. Brooks Smith, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

Francisco Flores Barrera (aka Mariana Andrea Flores[1]), a native of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of her appeal of an immigration judge's ("IJ") denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We review factual findings, including adverse credibility determinations, for substantial evidence, and legal questions de novo. *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020). We deny the petition.

1.    Considering the "totality of the circumstances[ ] and all relevant factors," *Alam v. Garland*, 11 F.4th 1133, 1137 (9th Cir. 2021) (en banc) (alteration in original), we conclude that substantial evidence supports the agency's adverse credibility determination. The IJ and BIA found significant discrepancies between statements that Flores made in her border and credible fear interviews and statements that she made in her second asylum application and hearing testimony about the basis of her claims.[2] Thus, the agency concluded that Flores was not

---

[1] After removal proceedings commenced, Flores, a transgender woman, officially changed her name to Mariana Andrea Flores.

[2] Flores filed an earlier asylum application, which was denied, and she did not appeal and was deported. In the instant petition, she challenges the IJ's determination that she was precluded from filing a second asylum application and argues that she established changed country conditions. The BIA assumed Flores was not precluded from applying for asylum and, thus, did not reach these issues. We therefore do not consider them. *See Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1075 (9th Cir. 2020) ("Our review is limited to those grounds explicitly relied

credible.

In her border and credible fear interviews, Flores told immigration officers that she had not been persecuted in Mexico. In both interviews, she stated that she came to the United States because she feared that her family would harm her because she is transgender. During the credible fear interview, when asked if she "fear[ed] the gov[ernment] or police of [her] home country would harm [her], she responded "I don't fear they will harm me, but they do not protect me." When asked who had "harmed or threatened her," Flores said her family and neighbors. But in her second asylum application, she described an incident in which the police asked for her health card, placed her in a vehicle, threatened her with jail, and asked for sexual favors. In her hearing testimony, she stated that she was placed in a police vehicle six times, and three of those times she was asked for sexual favors. The "[m]aterial alterations in [Flores's] account of persecution are sufficient to support an adverse credibility finding." *Zamanov v. Holder*, 649 F.3d 969, 973–74 (9th Cir. 2011) (denying petition for review when testimony portrayed "a much different—and more compelling—story of persecution than [the] initial application").

---

upon by the [BIA]." (alteration in original) (citation omitted)). Flores also purports to challenge the BIA's determination that she did not belong to a particular social group. The BIA did reach this conclusion. Accordingly, the issue does not present a basis for granting the petition.

3

The agency properly considered Flores's statements during her border interview and her credible fear interview because both interviews included indicia of reliability. *See Liu v. Holder*, 640 F.3d 918, 923 n.2, 925–26 (9th Cir. 2011) (holding that the agency permissibly relied on petitioner's airport statements as part of adverse credibility determination when the interview was transcribed, and petitioner was provided an interpreter and had an opportunity to clarify her answers); *Li v. Ashcroft*, 378 F.3d 959, 963 (9th Cir. 2004) (concluding that petitioner's airport interview was substantial evidence in support of adverse credibility determination and stating that this court's "inquiry ends if the IJ could reasonably conclude that a sworn interview statement was a reliable impeachment source"), *superseded on other grounds by statute*, 8 U.S.C. § 1158(b)(1)(B)(iii).

Specifically, the border interview, recorded on an I-213 form, indicates that Flores's statements were sworn and witnessed, the interview was conducted in English, Flores stated she understood everything read to her in a jurat statement, and she was willing to answer questions.[3] *Cf. Singh v. Gonzales*, 403 F.3d 1081, 1089–90 (9th Cir. 2005) (concluding that the record of an asylum interview lacked reliability because, in part, it did not indicate the language in which the interview

---

[3] We need not resolve whether these indications of reliability are sufficient because, even if the agency erred in relying on the border interview, the credibility determination remains supported by material differences between Flores's credible fear interview and her asylum application, and between Flores's credible fear interview and her testimony on direct examination.

was conducted, or that an oath was administered before the interview began). The record of the credible fear interview indicates that a Spanish interpreter participated telephonically, and that an oath was administered to Flores. There is also a written record of the questions and answers during the interview.[4] *See id.* at 1089–90 (describing indicia of reliability). Additionally, unlike the petitioner in *Singh* who was not "given any opportunity to explain" perceived discrepancies, *id.* at 1090, Flores was given an opportunity at the merits hearing to explain the discrepancies between her credible fear interview and her subsequent statements and testimony.

Moreover, the agency considered Flores's explanations for the discrepancies and found them unpersuasive.[5] Flores explained that she "answered no" when the asylum officer asked her if the police harmed or threatened her because she feared her statements would be "disclosed . . . to the police in Mexico." Flores's

---

[4] Additionally, at the beginning of the interview an asylum officer told Flores that the "purpose of the interview" was to determine eligibility for "asylum or protection from removal to a country where your fear persecution or torture," it was "very important that [she] tell the truth," and "feel comfortable telling [the officer] why [she] fear[s] harm," and that the interview may be her "only opportunity to give such information."

[5] In her petition for review Flores states that she did not understand that her communications with the asylum officer would remain confidential until after she retained counsel, and therefore she argues that little weight should be given to her failure to mention the police abuse in her "first pro se I-589." But the BIA did not rely on that document to affirm the credibility determination. Thus, even if the IJ failed to consider this explanation for an omission from Flores's "first pro se I-589," that failure was inconsequential.

statements in her credible fear interview, including her denials of harm or threats by police in response to an asylum officer's questions, directly *contradicted* her assertions in her second asylum application and hearing testimony. Thus, Flores did not merely omit details from her earlier statements. Flores's case, therefore, is distinguishable from our caselaw rejecting adverse credibility determinations based on the delayed reporting of rape or sexual assault. *See Paramasamy v. Ashcroft*, 295 F.3d 1047, 1050, 1053 (9th Cir. 2002) (observing that the petitioner "was not asked in her airport interview about the details or conditions of her Army confinement, so her failure to mention the sexual assault there cannot be considered an inconsistency"); *Kebede v. Ashcroft*, 366 F.3d 808, 811 (9th Cir. 2004) (considering the "timing" of the petitioner's disclosure of sexual assault, not whether it contradicted prior testimony); *Mousa v. Mukasey*, 530 F.3d 1025, 1028 (9th Cir. 2008) (similar).

Thus, the agency based its credibility determination on inconsistencies between Flores's second asylum application and hearing testimony and her earlier denials of harm or threats from the police, and then found her explanation for those discrepancies unpersuasive. The agency was not compelled to credit Flores's explanations. *See Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) ("If the IJ reasonably rejects the alien's explanation, or if the alien fails to provide a plausible explanation, the IJ may properly rely on the inconsistency as support for an

6

adverse credibility determination." (citation omitted)), *overruled in part on other grounds by Alam*, 11 F.4th 1133. And it reasonably rejected Flores's explanation for the material inconsistencies.

2. The agency also did not err in concluding that the other record evidence did not independently meet Flores's burden. In the absence of credible testimony or other evidence to meet her burden, Flores's asylum and withholding of removal claims fail. *See Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017).

3. Substantial evidence supports the agency's denial of CAT relief, which depended on the same testimony as the asylum and withholding of removal claims. Unlike the petitioner in *Avendano-Hernandez v. Lynch*, 800 F.3d 1072 (9th Cir. 2015), Flores did not offer expert testimony to provide additional context for the country conditions evidence. *Id.* at 1080–82 (discussing expert testimony). And the record in this case, including an unchallenged finding that the harm Flores experienced in Mexico did not rise to the level of past persecution, does not compel the conclusion it is more likely than not that Flores would be tortured if returned to Mexico. Flores has not shown that the record in this case compels a different conclusion than the one reached by the agency. *See Jiang v. Holder*, 754 F.3d 733, 740–41 (9th Cir. 2014) (concluding that a country report by itself was "insufficient to compel the conclusion that *Petitioner* would be tortured if returned"), *overruled on other grounds by Alam*, 11 F.4th 1133.

**PETITION FOR REVIEW DENIED.**

*Francisco Flores Barrera (Mariana Andrea Flores) v. Garland*, No. 15-72997

**Paez**, Circuit Judge, dissenting:

Because the agency's adverse credibility determination and analysis of the country conditions evidence is not consistent with our precedent, I respectfully dissent.

**1.** It was error for the IJ and the BIA to rely on Flores Barrera's ("Flores") failure to report sexual assault sooner as the primary basis for the adverse credibility finding. As we have firmly recognized, "the assumption that the timing of a victim's disclosure of sexual assault is a bellwether of truth is belied by the reality that there is often delayed reporting of sexual abuse." *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1053 (9th Cir. 2002) (holding that the petitioner's failure to raise sexual assault in two prior interviews did not support an adverse credibility determination); *see also Mousa v. Mukasey*, 530 F.3d 1025, 1027-28 (9th Cir. 2008) (rejecting Mousa's failure to report sexual assault until she testified before the IJ as a basis for an adverse credibility finding); *Kebede v. Ashcroft*, 366 F.3d 808, 811 (9th Cir. 2004) (same).[1]

---

[1] To the extent *Paramasamy* relied on the fact that the petitioner's sexual assault could not be an inconsistency, 295 F.3d at 1053, our later decisions make clear that—because of the stigma and ineffective response that survivors often face— "failing" or being "reluctant" to disclose sexual assault does not speak to their credibility, *Kebede*, 366 F.3d at 811; *Mousa*, 530 F.3d at 1027-28. Here, Flores's reluctance to report the sexual assault, including the denial of abuse at her credible fear interview, does not undermine her credibility.

Flores recounted in her declaration that Mexican police officers accused her of illegal sex work, placed her in their vehicles, threatened her, asked her for sexual favors, and, along with physically harming her, "grabbed [her] sexually." On one occasion shortly before her re-entry into the U.S., the police ordered her into their truck and threatened to place her in jail if she did not perform oral sex on an officer. Flores began to cry because, as she put it, "[t]his had happened many times before and [she] just couldn't take it anymore." The officers ordered her out of the truck after she cried and begged. The agency acknowledged that Flores testified the police subjected her to sexual assault, even upon threat of jail, yet discredited her because she did not raise it during her border or credible fear interview.

Our cases recognize that "[a] woman who has suffered sexual abuse by government officials in her home country may be especially reluctant to reveal that abuse to government officials in this country, even when such a revelation could help her asylum application." *Mousa*, 530 F.3d at 1028 (citing *Paramasamy*, 295 F.3d at 1053). This is "especially true when the woman is fleeing a country where reported rapes often go uninvestigated." *Id.* Flores explained in her testimony, consistent with her declaration, that she did not disclose the abuse by police sooner because she feared the information would be shared with the Mexican authorities and they would harm her. As the record shows, Mexican authorities have an

2

"ineffective and unsupportive" approach to investigating sexual assault and sexual violence remains a widespread problem in the border region. These concerns are further compounded because Flores is a transgender woman in Mexico—where country conditions evidence shows that police abuse transgender women, and other groups, with impunity.

In my view, this flaw in the agency's reasoning is sufficient alone to grant the petition, but the agency's other reasons for rejecting Flores's explanation also cannot withstand scrutiny. The IJ improperly speculated that Flores understood the privacy of immigration proceedings, including the different agency interviews, because she had prior contact with local police and courts in Nevada. *See Joseph v. Holder*, 600 F.3d 1235, 1245 (9th Cir. 2010) (rejecting the IJ's reasoning as improper speculation about the petitioner's level of relevant knowledge). The IJ also failed to consider Flores's explanation that although she had experienced a prior immigration removal proceeding, she was pro se at that time. *See Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1092-93 (9th Cir. 2014) ("An IJ must consider and address '[a]ll plausible and reasonable explanations for any inconsistencies' that form the basis of an adverse credibility determination.").

Further, the agency erred by relying on the record of Flores's border interview to impeach her. In *Singh v. Gonzales*, we held that the record of Singh's asylum interview was not sufficiently reliable to impeach his testimony. 403 F.3d

3

1081, 1089-90 (9th Cir. 2005). Similar to *Singh*, the record here is limited to an I-213 form providing a short, two-paragraph summary of Flores's border interview without any transcript or record of the questions and answers. *See id.* at 1089. The interviewing officer did not testify at her hearing, nor was Flores asked about the border interview or given an opportunity to explain perceived discrepancies. *See id.* at 1089-90. Indeed, the border interview was in English, but Flores's removal proceedings were conducted with a Spanish interpreter. Her statements were made under oath, to be sure, but that alone does not render a record reliable for impeachment. *See id.* Without a record of the questions asked or Flores's answers, we cannot evaluate the agency's findings. *Id.* at 1089.

The majority relies on *Liu v. Holder*, but Liu's airport interview was transcribed, such that we could assess her "affirmative statement" against the agency's findings, and Liu was given an opportunity to address the "incongruity at her hearing." 640 F.3d 918, 923, 926 (9th Cir. 2011). In fact, we reiterated in *Liu* that an interview can be used for impeachment *only if* the record includes indicia of reliability, including a transcript, interpreter, and an opportunity to clarify answers. *Id.* at 923 n.2 (citing *Singh*, 403 F.3d at 1089). The majority's cite to *Li v. Ashcroft*, 378 F.3d 959 (9th Cir. 2004), fares no better because *Li* also "illustrates the importance we have placed on ensuring that sufficient indicia of reliability exist *before* an asylum applicant's [] interview may properly be used as an

4

impeachment source," *Singh*, 403 F.3d at 1089 (emphasis added) (distinguishing the "substantial evidence" in *Li* from the insufficient reliability for Singh's interview). Flores's border interview fails that threshold requirement.

Flores's failure to mention the incidents of sexual assault sooner was an improper basis for the adverse credibility finding, and the summary of her border interview was an improper basis on which to impeach her. This leaves only the differences between Flores's declaration and her testimony. The details Flores testified to are entirely consistent with her declaration, and were not volunteered by Flores but rather elicited on cross-examination, so the additional details cannot alone support the adverse credibility finding. *See Iman v. Barr*, 972 F.3d 1058, 1067-69 (9th Cir. 2020).

**2.** Apart from the adverse credibility determination, the majority ignores that the agency's analysis of the country conditions evidence has been directly rejected by our court. The BIA's reliance on civil rights laws protecting sexual orientation in Mexico is "fundamentally flawed," as it conflates sexual orientation with gender identity and "mistakenly assumes" such laws would benefit a transgender woman. *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1080-82 (9th Cir. 2015). Rather, the "unique identities and vulnerabilities of transgender individuals must be considered" in a claim based on transgender identity. *Id.* at 1082. Flores did not provide an expert declaration to corroborate that the laws

5

protecting "the gay and lesbian community" in Mexico have, in fact, led to an increase in persecution. *See id.* at 1081-82. But the majority's attempt to distinguish *Avendano-Hernandez* by noting the expert's opinion minimizes the holding of that case: The agency erred by relying on laws that protect sexual orientation—an identity that is "sometimes overlapping," but stands entirely "distinct" from gender identity. *Id.* at 1081.

The BIA also failed to consider "the difference between a country's enactment of remedial laws and the eradication of persecutory practices," as well as the fact that national efforts "do not necessarily reveal anything" about state or municipal-level practices. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1072 (9th Cir. 2017) (en banc). Flores did not need an expert because the record country conditions evidence readily "shows that police specifically target the transgender community for extortion and sexual favors," "that Mexico suffers from an epidemic of unsolved violent crimes against transgender persons," *Avendano-Hernandez*, 800 F.3d at 1081, that transgender identity is not afforded the same protection as sexual orientation, and quite the opposite, "public moral laws" are often used to harass, detain, and extort transgender individuals.

For those reasons, the country conditions evidence and the childhood abuse Flores suffered compels the conclusion that she is more likely than not to face

persecution.[2]  But even if the evidence were insufficient to compel relief, we should grant the petition and remand for the BIA to reconsider its analysis because it did not have the benefit of our opinion in *Avendano-Hernandez* when it rejected Flores's claims.  *See, e.g.*, *Lorenzo-Lopez v. Whitaker*, 747 F. App'x 587, 588 (9th Cir. 2019); *Medina v. Sessions*, 734 F. App'x 479, 482, 484 (9th Cir. 2018); *Mondragon-Alday v. Lynch*, 625 F. App'x 794, 795 (9th Cir. 2015).

In sum, I would grant the petition for review and remand for the agency to reassess Flores's credibility and eligibility for relief.

---

[2] Her childhood abuse shows a well-founded fear of future persecution even if, as the majority suggests, the abuse does not compel a finding of past persecution.  *See Lim v. I.N.S.*, 224 F.3d 929, 936 (9th Cir. 2000) (holding that events did not compel a finding of past persecution but "trigger[ed] a well-founded fear of future persecution").