**Reem MAROKI, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–73789.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 20, 2005.

Filed March 10, 2006.

Stanley J. Riney, Esq., Stanley J. Riney Law Offices, La Mesa, CA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Terri J. Scadron, Esq., Robbin K. Blaya,

Esq., DOJ, U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: KLEINFELD and FISHER, Circuit Judges, and SHADUR, Senior District Judge.*

MEMORANDUM **

Reem Maroki petitions for review of an order of the Board of Immigration Appeals ("BIA"), which affirmed without opinion an immigration judge's ("IJ") denial of her applications for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). The IJ denied Maroki's applications because he found her not credible. We grant the petition and remand to the BIA for further consideration of Maroki's applications for relief.

We review credibility findings for substantial evidence. Nonetheless, "[w]e do not accept blindly an IJ's conclusion that a petitioner is not credible" but instead "examine the record to see whether substantial evidence supports that conclusion and determine whether the reasoning employed by the IJ is fatally flawed." *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir.1996). Although given substantial deference, an adverse credibility finding cannot be based on "conjecture and speculation." *Guo v. Ashcroft,* 361 F.3d 1194, 1199 (9th Cir. 2004). Rather, the IJ "must have a legitimate articulable basis to question the petitioner's credibility, [ ] must offer a specific, cogent reason for any stated disbelief" and

---

* The Honorable Milton I. Shadur, Senior Judge for the United States District Court for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

any such reason "must be substantial and bear a legitimate nexus to the finding." *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir. 2002). In addition, "minor discrepancies, inconsistencies or omissions that do not go to the heart of an applicant's claim do not constitute substantial evidence to support an adverse credibility finding." *Chen v. Ashcroft,* 362 F.3d 611, 617 (9th Cir.2004). Viewed in light of these governing principles, the IJ's determination in this case fails. Instead, the evidentiary record compels us to reach a contrary result. *See de Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997).

The IJ based his adverse credibility finding on several grounds. First, he found Maroki's hearing testimony about the arrest and torture of her father to be inconsistent with the information she provided at her credible fear interview. [ER 38–39] Maroki did not, however, affirmatively deny in that interview that her father was arrested and tortured; the record simply does not show any reference to the incident. *Cf. Li v. Ashcroft,* 378 F.3d 959, 963 (9th Cir.2004) (upholding an IJ's adverse credibility finding where the petitioner during an airport interview did not "simply fail[ ] to mention an instance of abuse or to provide as much detail in [the] interview" but instead "affirmatively denied any mistreatment by the Chinese Government, stated that neither he nor his family had ever been arrested, and explained that he left China for financial reasons," all in contrast to his hearing testimony). The credible fear worksheet

asks whether the interviewee "or any member of [his or her] family [has] ever been mistreated or threatened by anyone in any country to which [the interviewee] may be returned." [ER 138] According to the typewritten response, Maroki answered "yes," explaining that she and her family were threatened by Muslims in Iraq because they were Christians, that her father was seriously injured in a car accident involving the Iraqi police and that she was arrested and detained when she reported the accident to government authorities. [ER 138] The record does not reveal whether the interviewer focused Maroki on abuses related to her father. Although Maroki may have failed to mention a serious instance of her family's persecution by Iraqi government officials, this omission in a credible fear interview does not provide a basis for discrediting her testimony altogether.[1] *See, e.g., Singh v. INS,* 292 F.3d 1017, 1021 (9th Cir.2002) ("Requiring evidentiary detail from an airport interview not only ignores the reality of the interview process, but would, in effect, create an unprecedented preasylum application process.").

Second, and most troublesome, the IJ relied heavily on Maroki having first testified that she was not *"arrested"* in Iraq but then testified, in the IJ's words, "that she was taken into custody" and *"interrogated* overnight" by police authorities. [ER 40] This finding is flawed in two respects. The record plainly shows that Maroki was confused about the American

---

1. Nor are we sure whether Maroki's recorded responses—including that she was "arrested and detained" following her father's accident—directly correspond to those given or whether the interviewer recorded some distilled or summary version based on his best recollection or estimation of her responses. Although the credible fear worksheet indicates that an "interpreter service" was used, the worksheet also states that only Maroki

and the asylum officer were present at the interview, and we cannot tell the extent to which Maroki understood or answered the questions. [ER 136] *Compare Li,* 378 F.3d at 963 (accepting the IJ's findings of inconsistencies in part because the record demonstrated that various procedures were used to ensure that interviews were accurately understood and recorded).

legal meaning of the words "arrest," "interrogate" and "detain." A fair reading of the record reveals no inconsistency regarding Maroki's testimony that she was not arrested in Iraq and was interrogated "almost all the night" at a Balad police station. [ER 105–07] Significantly, the IJ seriously mischaracterized an important aspect of Maroki's testimony when he discredited her contention that she did not understand the meaning of an "arrest." Maroki did not, as the IJ stated, define an arrest as "a situation where the police *take a person to a police station,*" [ER 40] but instead testified that an arrest is "when a person is *put in jail.*" [ER 113] The distinction is not unimportant: throughout her hearing testimony, Maroki insisted on calling the episode in Balad a "detention" or "interrogation," rather than an "arrest."[2] [ER 106] And Maroki's actual definition of arrest is consistent with her earlier testimony that the Iraqi authorities "didn't *put me in jail.*" [ER 106] The IJ therefore erred in relying upon "perceived inconsistencies not based on the evidence"

to find Maroki not credible. *Paramasamy v. Ashcroft,* 295 F.3d 1047, 1052 (9th Cir.2002); *see also Smolniakova v. Gonzales,* 422 F.3d 1037, 1044–47 (9th Cir. 2005) (reversing IJ's adverse credibility determination in part because the perceived inconsistencies were based on a "misconstruction of the record").

Moreover, there is substantial evidence of either faulty translations or difficulties in interpretation (or both) that resulted in a basic failure of communication. For example, when the government attorney asked Maroki whether there was "any reason why you didn't mention *an arrest* earlier when I asked you on several occasions whether you've been *arrested,*" Maroki answered, "they, they, they *interrogated.* They *detained* me, they *interrogated* me, then my—(interpreter: I'm not sure ankle or)—came to take me out, so *they didn't put me in jail.*"[3] [ER 106] Apparent inconsistencies based on faulty or unreliable translations may not be sufficient to support a negative credibility finding.

---

2. For example, when the government attorney asked Maroki whether she remembered telling her credible fear interviewer that she was "arrested and detained after [her] father was involved in [his] automobile accident," Maroki responded, "Yes, they *detained* and *interrogated* me." [ER 106] Even when the IJ interjected to give Maroki an opportunity to explain why she gave "two different answers" to the question whether she was "ever *arrested* in Iraq," [ER 107] Maroki insisted that she "[was] not lying" and that she was "telling [the IJ] what happened exactly." She explained, "They took me, *they kept interrogating me almost all the night they were interrogating me.*" [ER 107] Because the IJ presumed that Maroki was testifying that she was "arrested," the IJ again asked Maroki to explain the inconsistency. [ER 108] Maroki answered, "I don't know what to tell you.... I, this the truth what happened. *I see it like interrogation only. I don't know this is called also detention.*" [ER 108]

3. Other exchanges reveal the disconnect between the questioner, Maroki and her interpreter. For example, when the government attorney asked Maroki whether she was "ever harmed by anyone in Iraq," Maroki incomprehensibly answered that "the harm was that when we would leave the carriage, they harm us like they could not, some boys could not Christian girl." [ER 90] In another example, when the government attorney asked Maroki, "so this answer that you gave to the immigration inspector is what the smuggler told you to say, correct?," Maroki responded, "How you mean teach me to do?" [ER 112] *Cf. Abovian v. INS,* 219 F.3d 972, 979, *as amended by* 228 F.3d 1127 *and* 234 F.3d 492 (9th Cir.2000) (noting that translation difficulties may have contributed to the purported disjointedness and incoherence in the petitioner's testimony); *see also Perez–Lastor v. INS,* 208 F.3d 773, 783 (9th Cir.2000) (noting that "unresponsive answers by the witness provide circumstantial evidence of translation problems").

*See, e.g., He v. Ashcroft,* 328 F.3d 593, 598 (9th Cir.2003).

Third, Maroki's omission in her asylum application of her interrogation in Iraq does not provide a sufficient basis for finding her testimony incredible. *See, e.g., Bandari v. I.N.S.,* 227 F.3d 1160, 1167 (9th Cir.2000). Rather, "[i]t is well settled that an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application." *Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996).

Fourth, Maroki's lie to customs officials about where she was traveling from was not only peripheral to her asylum claim, *see Mendoza Manimbao v. Ashcroft,* 329 F.3d 655, 660 (9th Cir.2003), but she also offered an explanation for it that the IJ acknowledged was valid, namely that her smuggler threatened she would "not see [her] parents again" if she told U.S. customs officials the truth. [ER 41, 111–12] Given this valid explanation, Maroki's lie did not provide a legitimate basis to question her credibility nor did it "bear a legitimate nexus to the [adverse] finding." *Gui,* 280 F.3d at 1225.

Finally, the IJ improperly concluded that "any reasonable trier of fact would have very little faith in [Maroki's] credibility," [ER 41] reasoning that because Maroki was attempting to secure lawful permanent residence in the United States, "she has a great deal at stake" and "her incentive to lie is great." [ER 42] This reasoning is "fatally flawed." *Gui,* 280 F.3d at 1225. All asylum applicants potentially have a "great deal at stake," and those facing removal to a country in which

they expect to be persecuted may indeed believe it to be in their interest to lie, however mistaken. To permit an IJ to base a negative credibility finding on an inference that all asylum applicants have an "incentive to lie" would impose on the applicants a presumption of dishonesty that is both contrary to the statutory scheme and unjust. *See, e.g.,* 8 U.S.C. § 1158(b)(1)(B)(ii) (stating that the uncorroborated testimony of an applicant "may be sufficient to sustain the applicant's burden" of establishing refugee status).[4]

We therefore grant the petition and remand to the BIA so that it can decide, in the first instance, whether Maroki is eligible for asylum, withholding of removal or relief under the CAT. *See INS v. Ventura,* 537 U.S. 12, 16–18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). The agency shall make this determination in light of Maroki's credible testimony. We also suggest that the new hearing be held before a different IJ. *Perez–Lastor,* 208 F.3d at 783.

Petition **GRANTED** and **REMANDED** for further proceedings consistent with this disposition.

KLEINFELD, Circuit Judge, dissenting.

I respectfully dissent.

The law requires us to determine whether the IJ offered a "legitimate articulable basis" for questioning Maroki's credibility or a "specific, cogent reason for any stated disbelief."[1] The majority finds that Maroki's explanations for her inconsistent testimony *could* have been credited and that there *may* have been legitimate explana-

---

4. The IJ's belief that Maroki is predisposed to lying appears to taint each of his credibility findings and further compels us to reach a contrary result. *See Paramasamy,* 295 F.3d at 1054 ("The reliance on [an] improper factor further erodes our confidence in the existence of a reasonable basis for the adverse credibility determination.").

1. *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir. 2002)

tions for her inconsistencies or omissions. But this is not the test. Rather, we may only reverse an IJ's "not credible" finding if the record *compels* the inference that the witness was credible.[2] We must therefore uphold the IJ's finding so long as a rational judge could have found as he did. There is sufficient support in the record for the IJ's no credibility finding in this case.

There were serious inconsistencies between Maroki's earlier and later testimony and in the papers that went to the heart of her asylum claim. Though she testified before the IJ that her family left Iraq due to her father's torture, she never mentioned her father's alleged torture in her credible fear interview. She said then that he was in a car accident with the police and that the police refused to call an ambulance. Neither did she mention her own troubles with the police. Instead, she explained at her credible fear interview that her Christianity was the reason she feared returning to Iraq. The majority dismisses these as "details." That unduly minimizes a big difference. If her father's mistreatment or her own run-ins with Iraqi police were really the primary motivations for leaving Iraq, the IJ could reasonably expect her to mention them at the interview. Her father's torture theory does not appear until her pre-trial statement, filed nine months after the interview. It was reasonable for the IJ to doubt the veracity of these kinds of *post litem motam* reasons.

The majority also discounts what Maroki concedes were direct and intentional lies in her interview with customs officials. While she told them that she came from Turkey, that the smuggler traveled on the plane with her, and that she and her family separated in Iraq, these were flat out lies. The majority correctly notes that the IJ accepted as valid Maroki's explanation for this lie—that her smuggler told her to lie and threatened her. But the IJ did not use this as evidence in itself that Maroki's story was untrue, but to conclude that Maroki's willingness to lie to one government official indicated a willingness to lie to another. It is clear that Maroki was willing to tell direct lies to immigration officials when it was to her advantage. It may have been in Maroki's interest to lie to the customs officials, but it was also in her interest to lie to the IJ to get asylum, if she was believed. Regardless of whether the reasons for lying are rational, the person who tells them is still a liar. The IJ cannot be faulted for drawing the logical inference that Maroki, willing to lie to immigration officials under one circumstance, might be willing to lie to immigration officials under another. An inclination to lie to obtain immigration benefits *plus* admitted lies *plus* inconsistencies tending to prove other such lies adds up to substantial evidence, based on the record as a whole, for rejecting the petitioner's credibility.

I cannot agree with the majority's implication that Maroki did not understand the questions asked. She was represented by counsel throughout several months of hearings. She had a translator. She never complained that she couldn't understand the interpreter or expressed any difficulty with the interpreters. Though the majority's discussion on whether Maroki was "arrested" or "interrogated" or "detained" may look like misunderstandings rather than lies, there was plenty of undeniable lying.

Instead of upholding the IJ's finding because a rational judge could have found her not credible, the majority reverses because a rational judge *could* have found

---

**2.** *See INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

her credible. That turns the standard of review on its head.

Rather than examining each factor in isolation and according no weight to any factor which Maroki might reasonably explain away, we must to look at the evidence as a whole to determine whether the IJ could rationally have concluded that Maroki was not credible.

### A New IJ on Remand

Even if I thought the majority was correct, I would not join its unwarranted suggestion that the case be reassigned. There is no sign of bias in this case nor is there anything suggesting that the IJ would have difficulty putting aside his views, so reassignment is not justified.