**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0011n.06
Filed: January 5, 2007

No. 05-4435

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EMMANUEL N. TOE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM THE |
| | ) | BOARD OF IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**Before: CLAY and ROGERS, Circuit Judges; and KATZ, District Judge.**[*]

**ROGERS, Circuit Judge.** Petitioner Emmanuel Toe asks this court to vacate the decision

of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") order denying

Toe's applications for (1) asylum and withholding of removal; and (2) withholding of removal

pursuant to Article 3 of the United Nations Convention Against Torture. The IJ denied Toe's

applications because the IJ made an adverse credibility determination against Toe based on (1) Toe's

submission of counterfeit documents; (2) inconsistencies between Toe's asylum applications and

hearing testimony; (3) the timing of Toe's asylum application; and (4) Toe's overall presentation

during his testimony. Toe argues that the IJ's adverse credibility determination is not supported by

substantial evidence. We deny Toe's petition for review because Toe's submission of counterfeit

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of
Ohio, sitting by designation.

documents, when combined with other evidence of Toe's untrustworthiness, was sufficient to warrant an adverse credibility determination.

**Background**

Toe, a 56-year-old native of Liberia, alleges that he was persecuted because he was a supporter and employee of the Tolbert Government. By way of background, William R. Tolbert served as President of Liberia from 1971 until 1980, when he was overthrown in a coup led by Samuel Doe. *See* U.S. DEPARTMENT OF STATE, BACKGROUND NOTE: LIBERIA, HISTORY, Sept. 2006, http://www.state.gov/r/pa/ei/bgn/6618.htm. In 1989, a civil war began which led to Doe's removal from power and execution in 1990. *Id.* After the civil war ended in 1996, Charles G. Taylor was elected President and served from 1997 until 2003. *Id.*

During his removal hearing, Toe testified that he worked as a police officer from 1969 until 1974, when he became an immigration officer. At the removal hearing he complained of the following four incidents of persecution: First, Toe claimed that government agents persecuted him on June 10, 1980, after Samuel Doe took power, when Toe was handcuffed and "stripped naked and put in jail for two months." Toe testified that, upon his release from jail, his "rank" was reduced from Colonel to Major. (Toe's testimony is unclear as to whether by "rank" he was referring to his position in the military, police force, or immigration office.) Second, Toe testified that on November 12, 1985, government agents arrested and imprisoned him until June 6, 1986, purportedly because he was a rebel sympathizer. Toe stated that he was released from prison by a general presidential

pardon releasing all political prisoners. After being released from prison, Toe claimed that he worked at a gas station until the government shut the gas station down. Third, Toe testified that on January 27, 1998, under the new Taylor Government, government agents beat him at the airport where he then worked because he could not be trusted by the Taylor Government. Fourth, Toe testified that when he attempted to leave Liberia to come to the United States in July 1998, government agents in Liberia temporarily took his passport and detained him for several hours, but eventually permitted him to leave.

Toe came to the United States on July 14, 1998, to attend a Knights of St. John International Convention in Kentucky. On August 4, 1998, Toe filed an initial application for asylum and withholding of removal. Toe filed a second application on July 1, 2001. The IJ held a removal hearing on June 7, 2004.

At the beginning of the removal hearing, the IJ noted that two documents that Toe submitted—a marriage certificate and his child's birth certificate—were counterfeit. Toe's counsel, when the IJ asked for an explanation, stated that Toe obtained these documents from his wife in Liberia and that the documents did not concern Toe's asylum claim. The IJ responded that "evidentiary law . . . says that if you're willing to submit fraudulent evidence, then it does reflect adversely on [your] credibility." JA 45. The IJ explained that although he had not made a frivolous-filing determination and that he was "duty bound to listen to [Toe's] evidence," a frivolous-filing determination was "highly likely." JA 45-46. Consequently, the IJ advised Toe's counsel that Toe could withdraw his application for asylum (and continue an independent application for temporary

protective status), or risk a frivolous-filing determination. Under 8 C.F.R. § 1208.20, "an asylum application is frivolous if any of its material elements is deliberately fabricated." Toe chose to continue his removal hearing, and before testifying, the IJ again warned Toe that "if the Court determines that you have lied in the course of your examination or if you have submitted fraudulent counterfeit documents, . . . the Court is required by the law to make a finding that you have filed a frivolous petition." JA 49. The IJ also warned Toe of the consequences of a frivolous-filing determination, namely, that he would deny Toe's application for asylum, and that Toe could never return to the United States. Toe testified that his marriage certificate and his child's birth certificate were not counterfeit, that he requested these documents from Liberia, and that he had other evidence of his marriage and his child's birth.

In an oral decision, the IJ denied Toe's application for asylum. The IJ found that Toe was not a credible witness for four reasons. First, the IJ found that Toe submitted counterfeit documents in support of his asylum application. Second, the IJ found that Toe, in his August 1998 application for asylum, did not refer to his arrest and detention by government agents to which Toe testified during his hearing. Third, the IJ concluded that Toe had fabricated the incidents of persecution because had Toe been "arrested and detained so many many times going back to 1986, . . . he would have taken corrective action and made a departure from Liberia many many years ago." Finally, the IJ found that "the embellishment and outlandish presentation of these facts by [Toe] just are plainly not credible."

The IJ also concluded that Toe "filed a frivolous petition for asylum" because Toe included

counterfeit documents with his application, and therefore, Toe was "statutorily precluded from the privilege of voluntary departure." The IJ determined that Toe did not credibly rebut the finding that the documents were counterfeit, and stated that the submission of counterfeit documents "adversely reflects upon the credibility of [Toe]." In addition, the IJ denied Toe's petition for withholding because Toe did not establish the lower standard of proof required for asylum. Finally, the IJ denied Toe's claim for withholding of removal under Article 3 of the United Nations Convention Against Torture because Toe was not a credible witness, for the same reasons stated above.

In a short per curiam opinion, the BIA accepted the IJ's finding that Toe was not a credible witness because the IJ's finding was not clearly erroneous. Accordingly, the BIA affirmed the IJ's denial of asylum, petition for withholding of removal, and claim for protection under the Convention Against Torture. However, the BIA reversed the IJ's denial of voluntary departure, stating that "[b]ased upon our review of the record we are not satisfied that there is sufficient support for a finding that [Toe] filed a frivolous asylum application." JA 3. The BIA also granted voluntary departure "in the exercise of discretion." JA 3.

**Standard of Review**

This court reviews the BIA's determination that Toe does not qualify for asylum under the substantial evidence standard of review. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004); *Zaitona v. INS*, 9 F.3d 432, 434 (6th Cir. 1993). Because the BIA deferred to the IJ in making its determination, for simplicity we characterize our review as review of the IJ's decision. *See Gao v.*

*Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d

Cir. 2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the

IJ's decision to assess whether the BIA's decision to defer was appropriate.")). Where the IJ makes

an adverse credibility determination, this court reviews for substantial evidence and reverses "only

if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu*, 364 F.3d at 703

(quoting 8 U.S.C. § 1252(b)(4)(B)).

**Discussion**

The fact that Toe submitted counterfeit documents with his asylum application, combined

with other evidence of Toe's dishonesty, constitutes substantial evidence to support the IJ's adverse

credibility determination. This court has held "that the submission of a fraudulent document in

support of a key element of an asylum claim is sufficient to support an adverse credibility

determination." *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005); *see also Sy v. Gonzales*, No.

04-4111, 2006 WL 2787081, at *5-6 (6th Cir. Sept. 28, 2006) (unpublished); *Kasa v. Gonzales*, No.

03-4318, 128 Fed. Appx. 435, 438-39 (6th Cir. 2005) (unpublished). The documents at issue here,

however, arguably did not support a "key element" of any asylum issue, since Toe's wife and child

were not seeking asylum, and Toe's country-of-origin was not in issue. This is not a case, however,

in which the IJ based his  adverse credibility determination *solely* on the basis of counterfeit

documents that were only tangential to the asylum claim. Even "minor inconsistencies . . . that

would be an inadequate basis for the adverse credibility finding" can support other grounds for an

adverse credibility finding. *Yu*, 364 F.3d at 704. Thus, the fact that Toe submitted counterfeit

documents is relevant to the issue of whether the IJ's adverse credibility determination is supported by substantial evidence.

Likewise, the counterfeit nature of the documents need not be disregarded because the BIA rejected the IJ's frivolous-filing determination. Toe's argument in that regard ignores the fact that the standard for a frivolous application finding is more stringent than that for an adverse credibility finding. An asylum application is frivolous "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20. An adverse credibility determination may be justified in circumstances where a frivolous application finding cannot be justified. *See Muhanna v. Gonzales*, 399 F.3d 582, 589 (3d Cir. 2005).

The IJ gave three additional reasons, apart from the fact that Toe submitted counterfeit documents, to justify his adverse credibility finding: (1) Toe referred to his arrest and detention during his testimony, but not on his original asylum application; (2) the length of time between the alleged incidents of persecution and Toe's departure from Liberia made the allegations not believable; and (3) the "embellishment and outlandish presentation" of Toe's testimony made his allegations incredible. While the second reason appears speculative, the first and third reasons provide some support for the IJ's adverse credibility finding.

The alleged discrepancy between Toe's original asylum application and his hearing testimony was sufficient evidence to support the IJ's adverse credibility finding. The IJ found that in his original application, Toe

makes no reference to a purported arrest and detention by agents of the government of Liberia which purportedly occurred during January 1998. [Toe], however, testified that this did occur to him. The Court again finds [Toe] not credible in that he has asserted certain events which have not been included in his application for asylum, but he testified to in his sworn testimony before the Court this afternoon.

JA 21-22. In response, Toe argues that (1) he did not testify to being arrested and detained, but only beaten; and (2) these allegations were included in his original asylum application.

First, although the transcript does not explicitly show that Toe testified to being arrested and detained by government agents, there is enough evidence in the record to support the IJ's finding on this issue. At the relevant point in the hearing transcript, Toe said the following: "I was (indiscernible) in January, January 27th. (indiscernible) beaten at the airport." JA 73. The attorney for the Government then asked Toe if he could "explain why [his] asylum applications don't mention the January arrest in '98," to which Toe responded that he "should explain." JA 73. The attorney for the Government then asked Toe to "[e]xplain why you don't have the January arrest in '98 in your asylum application." JA 73. Toe answered that the January arrest was in the statement accompanying his second asylum application and that it was left out of the first application because he prepared that application without the assistance of an attorney (whereas he had such assistance with respect to the second application). JA 73-74. Thus, Toe implicitly admitted that there was a discrepancy between his testimony and first asylum application that required an explanation and that the discrepancy was his failure to include the fact that he was arrested. The record, therefore, suggests that Toe did testify to being arrested in January of 1998, as the IJ had found. The fact that we cannot tell exactly what Toe said due to the incomplete transcription of his testimony, although

not ideal for judicial review, does not detract from the result under the substantial evidence standard of review. Because it is not the case that "any reasonable adjudicator would be compelled to conclude to the contrary," the IJ's finding of fact is "conclusive." 8 U.S.C. § 1252(b)(4)(B).

Second, although Toe did refer to the beating he received in January 1998 in his original application by noting that he was "mistreated" by men who went to the airport, he did not state that he was arrested. Also, in response to a question on the asylum application which asked whether Toe was ever arrested, he did not mention this incident. This discrepancy went to the "heart" of Toe's asylum claim, *see Gao*, 299 F.3d at 272, because the difference between being arrested and beaten by government agents and being mistreated is significant. Therefore, this discrepancy supports the IJ's adverse credibility determination.

The IJ's adverse credibility finding was also properly based on Toe's demeanor during the removal hearing. The IJ found that Toe was not credible because of the "embellishment and outlandish presentation" of his testimony. Courts generally "accord credibility findings, and particularly the IJ's demeanor findings, substantial deference." *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1050 (9th Cir. 2002). The IJ sat through the proceedings, observed Toe while he testified, and came away with the impression that Toe was incredible because of the manner in which Toe testified. Thus, we defer to the IJ's credibility determination.

Finally, because the IJ's denial of Toe's petition for withholding of removal under Article 3 of the United Nations Convention Against Torture was based on the same adverse credibility

finding, we do not separately address that issue.

## Conclusion

The petition for review is denied.