

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2007

# Mei-Chia Li v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5269

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Mei-Chia Li v. Atty Gen USA" (2007). *2007 Decisions.* Paper 870.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/870

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NON-PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5269

MEI-CHAI LI

Petitioner,

v.

ATTORNEY GENERAL
OF THE UNITED STATES,

Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA File No. A78-842-774

Argued March 1, 2007

BEFORE: SCIRICA, <u>Chief Judge</u>,
McKEE and NOONAN[*], <u>Circuit Judges</u>

(Opinion filed:   June 28, 2007)

THOMAS V. MASSUCCI, Esq. (Argued)
401 Broadway, Suite 404
New York, NY 10013
          <u>Attorney for Petitioner</u>

MARY C. FRYE, Esq. (Argued)
Assistant United States Attorney

---

[*] The Honorable John T. Noonan, Jr., United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

PATRICK L. MEEHAN, Esq.
United States Attorney
VIRGINIA A. GIBSON, Esq.
Assistant United States Attorney
Chief, Civil Division
615 Chestnut Street
Philadelphia, PA 19106

Erica B. Miles, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Attorneys for Respondent

---

OPINION

---

McKEE, Circuit Judge.

Petitioner Mei-Chai Li, a native and citizen of China, petitions for review of an order of the Board of Immigration Appeals affirming the Immigration Judge's denial of her application for asylum, withholding of removal and relief under the Convention Against Torture. For the reasons set forth below, we will grant the petition.

**I.**

Petitioner, Mei-Chai Li is a native and citizen of the People's Republic of China. She entered the United States on or about May 13, 2001, without valid documentation.

2

Removal proceedings were instituted against her on May 16, 2001.

At her merits hearing before Immigration Judge Eugene Pugliese, Li asserted claims for asylum, withholding of removal and withholding under the Convention Against Torture ("CAT").

Li testified that she had been a Falun Gong practitioner since August 2000 and that she fears that if she returns to China she will be arrested by the Chinese government because of her practice. She further testified that her fear is based on the events of an evening in February 2001 when several public security officials came to her home to arrest her. They were apparently acting on a tip from someone who had reported that Li was practicing Falun Gong.

During the visit, although Li's mother denied Li's Falun Gong involvement, the police told Li's mother to surrender Li for interrogation and investigation. Li was not home when the police arrived, however, her mother later called to inform her that the police had come to arrest and interrogate her. Li testified that she became frightened and went into hiding as a result of that visit. She hid in China for close to half a month until she was able to leave China in April 2001.

In addition to her testimony, Li submitted corroborative documents in the form of a letter from her parents describing the events that occurred the night that the police visited her home and statements describing their knowledge of Li's Falun Gong practice while in China. She also submitted a letter from the friend who introduced her to the practice of Falun Gong. That letter described the changes her friend observed in Li after

3

she began the practice, as well as threats, detentions and interrogations that he had personally experienced as a result of his own Falun Gong practice. Li also submitted various country reports to support her fear of arrest. The 2003 Country Report on Human Rights Practices in China states that "[a]rbitrary arrest and detention [remain] serious problems." Administrative Record ("A.R.") at 166. It also reports that "[t]he law permits authorities, in some circumstances, to detain persons without arresting or charging them, and persons may be sentenced administratively to up to 3 years in reeducation-through-labor camps and other similar facilities without a trial." *Id.* Some Falun Gong adherents are confined to psychiatric hospitals. *Id.*

After consideration of Li's evidence of persecution, including her testimony, her application for asylum and the various supporting documents, the IJ denied her application for relief. His decision was based primarily on his conclusion that Li's testimony was not credible. He also found Li had not carried her burden of proof.

## II.

The Board of Immigration Appeals considered Li's timely appeal and affirmed the IJ's decision. The BIA adopted and affirmed the IJ's decision as its own. However, the Board supplemented the IJ's decision by concluding that, even if Li's testimony was credible, she had still failed to establish past persecution or a well founded fear of future persecution if returned to China.

When the BIA adopts the decision of the Immigration Judge, we review the decision of the IJ as the final decision of the agency. *Xie v. Ashcroft*, 359 F.3d 239, 242

4

(3d Cir. 2004) (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001)).

However, since the BIA also ruled that Li failed to establish her eligibility for relief even if her testimony is accepted, we must review the decision of both the BIA and the IJ. *See Miah v. Ashcroft*, 346 F.3d 434, 439 (3d Cir. 2003); *see also Chen v. B.I.A.*, 435 F.3d 141, 144 (2d Cir. 2006) (review extends to the entirety of the IJ's decision as well as the alternative Board findings where the Board adopts and affirms the IJ's decision and then assumes credibility in making an alternative finding for denial of relief).

We must uphold the agency's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (internal quotation and citation omitted).[1]

## III.

To be eligible for asylum under Section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158, an applicant must establish "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A). To be eligible for withholding of removal under Section 241(b)(3) of the INA, the applicant must demonstrate that his/her "life or freedom would be threatened in [the country of removal] because of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To qualify for relief under the CAT, the applicant

---

[1] We have jurisdiction to review the Board's decision under 8 U.S.C. § 1252 which grants federal courts of appeals jurisdiction to review final orders of the BIA.

must demonstrate that it is more likely than not that he/she would be tortured if removed. 8 C.F.R. § 208.16(c)(2).

## A. Credibility

We first consider whether substantial evidence supports the IJ's adverse credibility determination. We "look at an adverse credibility determination to ensure that it was 'appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (*en banc*) (quoting *In re S-M-J*, 21 I. & N. Dec. 722 (BIA 1997)). "Generally, minor inconsistencies and minor omissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding . . . [because] [t]he discrepancies must involve the heart of the asylum claim." *Berishaj v. Ashcroft*, 378 F.3d 314, 323 (3d Cir. 2004) (internal quotations and citations omitted).

The IJ based his credibility determination on what he identified as a discrepancy between Li's written asylum application and her testimony at the immigration hearing. A.R. at 49. On her asylum application, Li stated that she was fired from her job because she practiced Falun Gong. *Id.* at 50. In her testimony, however, Li did not mention losing her job. *Id.* In the IJ's view, this cast doubt on her credibility. We disagree.

This purported "inconsistency" does not go to the heart of Li's claim. Indeed, her termination because of her Falun Gong practice was not even relevant to her asylum claim because she does not allege that the government caused her to be fired from her job.

6

A claim of asylum must be based on persecution by a government actor or forces the government is either unable or unwilling to control.[2] *See Gao,* 299 F.3d at 272 (citation and quotations omitted).

A reasonable fact finder would not have rested an adverse credibility determination on this perceived inconsistency. Although the "omission" need not be ignored, the IJ failed to recognize that it may well have signified nothing more than Li's attorney's understandable conclusion that Li's loss of employment was not relevant to her claim for refugee status.

Moreover, in *Toure v. Attorney General*, we recognized that "an IJ has a duty to develop an applicant's testimony, especially regarding an issue that [he/]she may find dispositive." 443 F.3d 310, 325 (3d Cir. 2006) (citing *In re S-M-J-*, 21 I. & N. Dec. at 723-726 ("Although the burden of proof in establishing a claim is on the applicant, the Service and the Immigration Judge have a role in introducing evidence into the record."). Yet, the IJ did not make any inquiry about Li's employment or the circumstances under which she lost her job.

The IJ's second justification for an adverse credibility ruling relied upon Li's letters from her parents, and from a school friend in China who introduced her to Falun Gong practice. The IJ concluded that these letters suggested fraud. A.R. at 50-52. In the IJ's view, they were too similar, too vague and too general because they provided no

---

[2] There is nothing in the record to suggest that Li was employed by a government-owned construction company, rather than by a private company.

information beyond that relevant to Li's asylum application. *Id.* at 51. He thought the letters were unrelated to events that the writers actually saw or heard, and he therefore placed little credence in them. *Id.* at 50-52.

The IJ's characterization of this evidence is wholly inconsistent with the record. The only similarity we can identify between the two letters and the statement Li attached to her I-589 asylum application is that they both refer to the government's renewed interest in punishing Falun Gong members in January of 2001 as a "crackdown." However, the letters have a common translator. It should therefore come as no surprise that both letters refer to a "crackdown" as it is logical to assume that the translator interpreted whatever the letters actually said as a statement that the Chinese government was "cracking down" on Falun Gong practitioners. "Crackdown" is a perfectly accurate description of what happened. Indeed, it is hard for us to think of a more appropriate word to use.

We have previously cautioned against penalizing aliens for "inconsistencies" that result from translation errors. *See Balasubramanrim v. I.N.S.*, 143 F.3d 157, 162-64 (3d Cir. 1998). Similarly, consistencies ought not to be seized upon as indicia of fraud or collusion absent some evidence of misconduct. If we ignore the unremarkable fact that the two letters both speak of a "crackdown," it is clear that they are not so similar as to suggest fraud. It is not only reasonable, it is to be expected, that both letters would relate the events that caused Li to flee China and seek asylum in the United States. That is why the authors were requested to write the letters in the first place; to confirm the events

8

leading up to her departure.   Rather than suggesting fraud, the similarity of the events mentioned in the letters corroborates Li's claim that she had to flee China because of the government's response to her Falun Gong practice.

Furthermore, rejecting these letters because "they don't really say anything new" creates an impossible  "catch-22" for asylum petitioners.   If petitioners produce letters that are too similar in content, the letters can be viewed as fraudulent.  Yet, if the letters are too dissimilar, they lack the required corroboration.  Here, for reasons that are not at all apparent, the IJ rejected Li's corroborative letters because they offered "no new elements to the case, . . . [and because] they provide a different point of view of the same story."  A.R. 51.

This "explanation" is troubling.  The letters did not have to provide anything new; they were offered to corroborate testimony Li had already provided.  Corroboration is evidence that presents "a different point of view of the same story."  *See, e.g., Black's Law Dictionary* 344 (6th ed. 1990) (defining corroboration as testimony that "corresponds with the representation of other witnesses . . . or . . . comport[ing] with some facts otherwise known or established."); *see also id.* at 344-45 ("corroborating evidence," is "[a]dditional evidence of a different character to the same point.").  Yet, Immigration Judge Pugliese rejected Li's letters for that very reason.  Given his analysis and explanation for rejecting Li's corroboration, we can not help but be concerned that the explanation offered appears more consistent with attempting to dispute Li's claim than to objectively adjudicate it.

9

Our concern regarding the IJ's apparent predisposition to find against Li is heightened by his reliance on the hearsay nature of her testimony about the police visit to her home. The IJ explains: "[t]he respondent has no direct knowledge of any security officer wanting to see her . . . the respondent is relating things that her mother told her, nothing that she herself experienced." A.R. at 48. However, "hearsay evidence is, in fact, admissible in removal proceedings. Though the hearsay nature of evidence certainly affects the weight it is accorded, it does not prevent its admissibility in immigration cases." *Kiareldeen v. Ashcroft,* 273 F.3d 542, 549 (3d Cir. 2001). Although the IJ may have been commenting on the probative value of Li's account of the visit, it appears from his oral decision and the context of that statement that he was troubled by the very fact of the hearsay rather than the reliability of it. Of course, Li would not have to have first hand knowledge of the incident to demonstrate a "well-founded fear." A well-founded fear can be based on information she received from her mother. The pertinent inquiry is therefore not whether she had first hand knowledge of the visit to her home; but rather whether the information that she did have—from whatever source—was sufficient to support a well-founded fear that she would be persecuted "on account of" a protected classification if she returned to China. Moreover, if she had been home and therefore in a position to have firsthand knowledge of the visit, it is unlikely she would ever have been able to file for asylum because she would have been arrested before she could have fled to the United States.

Judge Pugliese's characterization of Li's letters as fraudulent is also troubling. In

10

fact, his analysis of that evidence serves to corroborate Li's testimony, rather than undermine it. The letter from Jiang Min, a former schoolmate, explains how he introduced Li to the practice of Falun Gong as well as his personal perspective on the treatment of Falun Gong practitioners by the Chinese government. A.R. at 136. Min also describes threats and warnings he personally received, as well as a notorious January 2001 demonstration where six Falun Gong practitioners tried to burn themselves. *Id.* After that demonstration the Chinese government began another wave of crackdowns following the 1999 ban on practicing Falun Gong. *Id.* The timing of the protest, and the Chinese government's response, supports statements by Li and her parents that one of Li's neighbors thereafter reported her involvement with Falun Gong and that the police came to Li's home to interrogate and/or arrest her as a result.

Nor do we believe that the letter from Li's parents suggests fraud. Contrary to the IJ's characterization of the letters as vague and general, failing to relate "things that they saw, things that they heard," Li's parents describe firsthand their account of their interaction with two police officers who came to their home looking for Li at the end of February, 2001. A.R. at 127. Her parents state that the police officers told them that they had received a report from a neighbor regarding Li's "cult" Falun Gong practice and that the parents must immediately surrender Li for investigation and interrogation. *Id.* Her parents state that, as a result of the police visit, they were "scared to death" and instantly called [Li] to warn her." *Id.* There is nothing "vague" or "general" about that testimony, and we therefore conclude that the IJ's negative credibility determination can not stand.

11

Indeed, given the IJ's analysis of the evidence, more specific letters may well have been rejected as being "too similar" in reporting unnecessary detail.

The IJ was also concerned about the absence of corroborating evidence from Li's husband, her fellow Falun Gong practitioners and her roommate, all of whom reside in the United States. A.R. at 45-47. Li argues that corroboration of her Falun Gong practice here in the United States is irrelevant to her claims of fear of persecution in China. We agree. An applicant can be expected to corroborate "'facts which are central to his or her claim and easily subject to verification.'" *Abdulai*, 239 F.3d 542 (quoting *In re S-M-J-*, 21 I. & N. Dec. 722). However, whether or not Li is currently practicing Falun Gong in the United States is not relevant to the Chinese government's perception of her as a Falun Gong practitioner or her fear of persecution if she returns to China.[3]

We realize, of course, that the absence of this testimony could have a bearing on Li's credibility as it may suggest that she is not really a Falun Gong practitioner at all and therefore didn't practice in China as she now claims. However, Li did produce two letters that corroborate her practice in China that the IJ never properly factored into his analysis

---

[3] In *Abdulai*, we set out a three-step test to determine whether the BIA can require and consider corroboration evidence. 239 F.3d at 554. First, the BIA must identify the facts for which "it is reasonable to expect corroboration." *Id.* Second, the BIA must decide whether an applicant has provided corroboration for the relevant facts. *Id.* Third, with regard to facts the applicant was unable to corroborate, the BIA must decide whether the applicant adequately explained his/her failure to corroborate them. *Id.* Having determined that it was unreasonable for the IJ to expect corroboration of Li's Falun Gong practice in the United States, we need not reach the second and third steps of the test.

of the evidence.

Having determined that the IJ's credibility determination is unsupported by the record, we will assume that she is credible and determine whether the evidence she presented satisfies her burden of proving her status as a refugee under the INA. As we noted above, the BIA ruled she had not satisfied her burden even if her evidence is accepted.

## B. Corroboration & the BIA Decision

The BIA's view of Li's evidence is also perplexing. The BIA cited *Matter of Y-B-*, 21 I. & N. Dec. 1136 (BIA 1998) in finding Li's testimony "too vague to establish that she was sought after [by] Chinese authorities on account of an enumerated ground in the Immigration and Nationality Act." A.R. at 2.

*Matter of Y-B-* involved a petitioner from Mauritania who testified that he had been arrested by the military because of his race. 21 I. & N. Dec. 1136. The Board ruled that he had failed to meet his burden under the asylum statute, in part, because his account of his arrest was suspiciously lacking in detail regarding the murder of his cousin that had allegedly taken place during the arrest. *Id.* at 1138. Because the petitioner's testimony was weak, the Board required corroborative evidence. *Id.* at 1139.[4] "Testimony is 'too vague' if it doesn't identify facts corresponding to each of the elements of one of the

_____

[4] We note that *Matter of Y-B-* is distinguishable from the instant facts because Li was not present when the security officials came to her home to arrest her and therefore cannot reasonably be expected to provide details of an event that she herself did not witness.

'refugee' categories of the immigration statutes, as interpreted by the BIA and the federal courts." *Qiu v. Ashcroft*, 329 F.3d 140, 151 (2d Cir. 2003). Li must demonstrate that she has a well-founded fear that the government sought to persecute her on the basis of her affiliation with Falun Gong.

Although Li's testimony is succinct, it is certainly not "vague." She testified that government officials came to her house and told her mother to tell her to surrender to them because they had information she was practicing Falun Gong. She fears being returned to China because she believes her status as a Falun Gong practitioner will result in her arrest, interrogation, and possible detention in a reeducation-through-labor camp in China. This certainly constitutes persecution "on account of" a protected ground under the INA, and it is consistent with findings contained in the 2003 State Department Report that was introduced into evidence. We therefore fail to see how her claim could be rejected because of an absence of "detail." It is true, of course, that she did not testify about the specific date that the police came to her home, what they were wearing, or how long they stayed. It is just as true that she didn't have to, as long as the details that she did provide establish her eligibility for "refugee" status, and they clearly did.

The BIA's affirmance of the IJ's denial of relief can not, therefore, be justified by characterizing Li's evidence as "vague." This is particularly true since she introduced corroboration that included the letters we have discussed above, and evidence of general country conditions that support her claim. Although the BIA purports to base its decision on the "vagueness" of Li's testimony, the decision appears influenced by the unsupported

14

adverse credibility finding the Board said it would ignore. *See Chen v. Gonzales*, 434

F.3d 212, 221 (3d Cir. 2005) (impermissible to blur the lines between the credibility of a

claimant and their adequacy of proof). Accordingly, we will grant the petition for review.

**IV.**

Where, as here, we reverse an adverse credibility finding, the appropriate remedy

is remand, "to determine whether [the petitioner] qualifies as a refugee . . . ". *Chen v.*

*Gonzales*, 447 F.3d 468, 477 (6th Cir. 2006) (citation and internal quotation marks

omitted). We will therefore vacate the BIA's decision and remand this case to the BIA

and instruct the agency to consider Li's evidence without considering the adverse

credibility determination. *See Senathirajah v. I.N.S.*, 157 F.3d 210, 222 (3d Cir. 1998)

(remanding to BIA with instructions to remand to IJ for decision on asylum and

withholding application, but without consideration of erroneous adverse credibility

finding reversed on appeal).

Lastly, in light of the concerns we have expressed about the IJ's assessment of Li's

credibility, if the BIA deems it appropriate to further remand this matter to an

Immigration Judge, we urge the Board to remand to a different IJ. *See Cham v. Gonzales*,

445 F.3d 683, 694 (3d Cir. 2006) (citing *Sukwanputra v. Gonzales*, 434 F.3d 627, 638 (3d

Cir. 2006). "[W]hile we 'recognize that the assignment of an [IJ] is within the province of

the Attorney General,' if on remand an IJ's services are needed, we believe 'the parties

would be far better served by the assignment to those proceedings of a different IJ.'"

*Korytnyuk v. Ashcroft*, 396 F.3d 272 (3d Cir. 2005) (quoting *Paramasamy v. Ashcroft*,

15

295 F.3d 1047, 1055 n.4 (9th Cir. 2002)).